# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

SHERRY EVANS-CARMICHAEL,
Individually, and JEFF CARMICHAEL,
Individually and as Guardian
and Next Friend of
TIA CARMICHAEL, a Minor,

      Plaintiffs,

vs.                                     Civil No. 04-1119 WJ/ACT

THE UNITED STATES OF AMERICA and
THE FEDERAL EMERGENCY
MANAGEMENT AGENCY,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>
## <u>ENFORCING SETTLEMENT</u>

      THIS MATTER comes before the Court pursuant to Defendants' Motion to Enforce

Settlement (Doc. 46).  Having reviewed the submissions of the parties and the record in this case,

I conclude that an evidentiary hearing is not necessary, and the settlement shall be enforced.

## BACKGROUND

      Plaintiffs owned a home and lived in Los Alamos, New Mexico at the time of the Cerro

Grande Fire in May 2000.  Plaintiffs were evacuated from their home during the fire which came

within 50 feet of their home.  Although their home did not burn during the fire, it was impacted

from smoke.

      As a result of the fire, the United States Congress enacted the Cerro Grande Fire

Assistance Act (CGFA), P.L. 106-246.  The purpose of the act was to compensate victims of the

fire by providing a method to expeditiously consider and settle claims for injuries caused by the fire.  CGFA § 102(b).

In September 2000, Sherry Carmichael submitted a Notice of Loss to the Office of Cerro Grande Fire Claims (Claims Office).  In August 2002, she filed a Proof of Loss for a total of $3,449,105.00 with a large volume of medical records on behalf of herself and her daughter Tia. Ms. Carmichael was ultimately offered $13,238.69 for injuries and damages by the Administrative Officer (AO).  Sherry Carmichael appealed the determination.  On the administrative appeal, the Director determined Ms. Carmichael's damages to be $4,838.69 with no damages for bodily injury or medical expenses, but did not seek recoupment of an additional $8,400.00 that had been awarded by the AO for bodily injury and medical expenses.

Ms. Carmichael sought judicial review of the Director's determination by filing a Complaint in this Court.  Mr. Carmichael joined in the Complaint as next friend of Tia and with a claim for loss of consortium.  On January 31, 2005, Defendant filed its Notice of Lodging of Administrative Record.  On February 15, 2005, Plaintiffs filed objections to the administrative record.

By Order filed June 16, 2005, this Court ruled in part on Plaintiffs' objections to the administrative record by overruling those objections that were clearly without merit.  See Doc. 15.  The Court then referred the remaining objections to United States Magistrate Judge Torgerson to make a recommendation to the Court regarding the disposition of those objections. See Order filed December 7, 2005 (Doc. 21).  Before Judge Torgerson could conduct a hearing on the objections, David Berlin, counsel for Plaintiffs at that time, moved to withdraw as counsel.

2

<u>See</u> Doc. 29.  That motion was granted, and Plaintiffs were given thirty days to obtain new counsel.  <u>See</u> Order filed April 18, 2006 (Doc. 33).

On June 13, 2006, Diane Garrity entered an appearance on behalf of Plaintiffs.  <u>See</u> Doc. 41.  On November 2, 2006 at 9:30 a.m., Judge Torgerson began the evidentiary hearing on Plaintiffs' remaining objections to the administrative record.  <u>See</u> Clerk's Minutes (Doc. 45).  At 11:16 a.m., the Court took a recess.  <u>See</u> Clerk's Minutes (Doc. 45) and the Transcript of Proceedings from the Evidentiary Hearing (Tr. Hr'g) p. 77.  At 11:54, Judge Torgerson went back on the record and stated that he had been advised that the parties had reached a settlement. <u>See</u> Clerk's Minutes (Doc. 45) Tr. Hr'g p. 77 (Docketed on January 29, 2007).  Counsel for Defendant stated the terms of the settlement as an agreement that Defendant would pay Plaintiff $90,000 in a method that would be tax-free to the Plaintiffs with payment to be made within 30 to 60 days.  <u>See</u> Tr. Hr'g pp. 77-78.  Counsel for Plaintiffs stated for the record that Defendant had stated the essential terms of the settlement and that her clients had agreed to the settlement.  <u>See Id.</u> at pp. 78.  Judge Torgerson then asked both Mr. and Mrs. Carmichael if they understood the terms of the settlement, and both responded that they did.  <u>See Id.</u>  Judge Torgerson then asked counsel for Defendant if he would be preparing the closing documents.  <u>See Id.</u>  Counsel for Defendant responded that he would be preparing the standard fire claim release as provided by regulation.  <u>See Id.</u>

On December 2, 2006, Defendant filed the instant Motion to Enforce Settlement. Attached to the motion as Exhibit B is an e-mail from Ms. Garrity, counsel for Plaintiffs, to Mr. Zavitz, Counsel for Defendant, in which she informed Mr. Zavitz that her clients were refusing to sign the settlement agreement.  On December 14, 2006, Ms. Garrity filed an uncontested motion

to withdraw as counsel for Plaintiffs (Doc. 47).  After a hearing, the Court granted the motion.

<u>See</u> Order filed December 22, 2006 (Doc. 54).  Plaintiffs filed a pro se response to Defendant's

Motion to Enforce Settlement in which they argued that the Court should not enforce the

settlement for a plethora of reasons that will be discussed in more detail below.  Defendant filed a

reply.  Plaintiff then filed a reply to the reply.  For the benefit of Plaintiffs, I will explain that there

is no reply to a reply.  An attempt to reply to a reply is called a surreply, and surreplies may not be

filed except by permission of the Court.  <u>See</u> D.N.M.LR-Civ. 7.6(b).  Thus, the Court would

normally strike the surreply, but, in this instance, the Court will go ahead and consider the

surreply because it amplifies some of the real conflicts and discord that have characterized this

case.

**DISCUSSION**

I.      THE SETTLEMENT AGREEMENT IS ENFORCEABLE

There is a strong public policy in favor of the settlement of lawsuits.  <u>See</u> <u>Sears v.</u>

<u>Atchison T. & S.F. R. Co.</u>, 749 F.2d 1451, 1455 (10th Cir. 1984).  "[T]he formation,

construction, and enforceability of a settlement agreement is governed by local contract law."

<u>Carr v. Runyan</u>, 89 F.3d 327, 331 (7th Cir.1996), cert. denied, 519 U.S. 1117, 117 S.Ct. 962, 136

L.Ed.2d 848 (1997) <u>cited in</u> <u>Judd v. University of New Mexico</u>, 1998 WL 314315 (10th Cir. June

2, 1998) (unpublished opinion).  New Mexico law favors the settlement of disputed claims. <u>See</u>

<u>Gonzales v. Atnip</u>, 692 P.2d 1343, 1344 (N.M. App.1984).  Absent proof of a violation of the

statute of frauds or other valid defense, an oral settlement is as enforceable as a written one. <u>See</u>

<u>Rojo v. Loeper Landscaping, Inc.</u>, 759 P.2d 194, 196 (N.M. 1988).  The Court has the power to

summarily enforce settlement of matters before it.  <u>United States v. Hardage</u>, 982 F.2d 1491,

1496 (10th Cir. 1993).  The party seeking relief from the settlement has the burden of persuasion.
Turner v. Burlington N.R.R., 771 F.2d 341, 345-46 (8th Cir. 1985).

The record in this case, and more specifically, the Transcript of Proceedings from the
November 2, 2006 hearing, makes clear that the parties to this case reached a settlement
agreement with the essential terms being that the United States would pay Plaintiffs $90,000 in a
manner that would be tax free.  The record is clear that Mrs. and Mr. Carmichael themselves
assented to and authorized this settlement.  Plaintiffs argue that the Court should decline to
enforce the settlement agreement.

I have combed through Plaintiffs' briefs and have found that their arguments can be
grouped into three general categories.  First, they make many of the arguments they have made
throughout this case regarding the incompleteness or inaccuracy of the Administrative Record
relied on by FEMA and the inadequacy of the procedures used by FEMA in making the final
determination that Plaintiffs appealed to this Court.  They also make new arguments with regard
to the record in this case based on the evidentiary hearing that was discontinued when the parties
informed the Court they had reached a settlement. The essence of these arguments is that
Plaintiffs' claims before this Court have merit and the Court should not enforce the settlement in
order to decide the merits of the case.  Second, Plaintiffs make arguments that they were induced
into the settlement through intimidation, fraud, misrepresentations and duress.  Third, Plaintiffs
argue that they never agreed to the full terms of the settlement as it was presented to them in
writing.

I will address each of these three categories of arguments in turn.  Before doing so,
however, I note that none of Plaintiffs' arguments can be construed as a challenge to Ms.

5

Garrity's authority to settle the case on behalf of Plaintiffs.  When an attorney agrees to a settlement on behalf of her clients, the client will not normally be bound by that settlement unless the client gave specific authority to the attorney to settle the case or otherwise assented to the settlement.  Augustus v. John Williams & Associates, Inc., 92 N.M. 437, 589 P.2d 1028 (1979).  However, in this case, Plaintiffs themselves appeared before Judge Torgerson and expressed their assent to the settlement.  Accordingly, there is no basis for an argument that Ms. Garrity agreed to a settlement without Plaintiffs' authority or assent, and Plaintiffs wisely make no attempt to argue this as a basis for nonenforcement of the settlement agreement.

      A.     The Relative Merits of Plaintiffs' Underlying Claims is Not a Basis for Nonenforcement of the Settlement

Most of Plaintiffs' arguments against enforcement of the settlement agreement are essentially arguments that their claims are meritorious and they should be allowed to litigate those claims.  These reasons are summarized as follows:

1.     Some of the documents reviewed in the evidentiary hearing were not part of the Administrative Record because the Court never consented to Plaintiffs' motion to supplement the Administrative Record.  According to Plaintiffs, the settlement was reached based on these documents, and they can no longer agree to the settlement because these documents are not part of the Court Record.

2.     Plaintiffs' due process rights were violated because FEMA refused all of their requests for a complete copy of their Cerro Grande Fire Claim file.  Because they could not obtain a complete copy of their file, they were unable to adequately supplement the administrative record or to prepare for the evidentiary hearing.  Had they been able to adequately prepare for the hearing, their approach to the hearing would have been different as well as their decision to consider the settlement offer made during the recess of the hearing.

3.     Plaintiffs' due process rights were violated because there are documents missing from the Court's copy of the Administrative Record.

4.    Plaintiffs' due process rights were violated because they gave documents to FEMA in a logical, organized sequence, but FEMA scrambled these documents before sending them to the Director for his review on Plaintiffs' appeal.  Additionally, documents were left out of the record.  Thus, the Director could not possibly have reached a fair decision.

5.    The Director had the discretion to convene a hearing.  Plaintiffs were verbally offered an opportunity for an informal meeting with the Director. After Mr. Berlin began representing Plaintiffs, he requested that the informal meeting be rescheduled so that he could attend.  There is nothing in the Administrative Record indicating any response to Mr. Berlin's request.  Thus, Plaintiff's due process rights to a hearing were violated because they did not have the opportunity for a hearing with the Director and because they did not have an opportunity to cross examine the experts who provided reports to the Director.

6.    Plaintiffs' rights were violated and the Cerro Grande Fire Assistance Act regulations were violated because the Director considered expert reports submitted after the Administrative Record was closed.

7.    Plaintiffs' due process rights were violated because they were never given an opportunity to respond to the expert reports submitted to the Director.

8.    Plaintiffs' due process rights were violated because the Director's final determination concluded that Plaintiffs were afforded all the process they were due, but the Administrative Record does not contain any response to Mr. Berlin's request to reschedule the informal meeting with the Director, there is no documentation showing that Plaintiffs participated in any hearing, and there is no documentation showing that Plaintiffs refused a hearing.

9.    The Director's final determination was arbitrary and capricious because (1) it relied on an expert report from an expert who never examined, tested or spoke with Mrs. Carmichael or Tia; (2) the expert report relied on was poorly documented; (3) the expert did not consider reports from Plaintiffs' medical doctors; (4) the expert report was admitted into the Administrative Record after the closing date; and (5) it goes against the weight of the evidence in favor of Plaintiffs' claims.

10.   The Director violated the purpose and policy underlying the Cerro Grande Fire Assistance Act because the process has not been expeditious and the process has not been sensitive to the burdens placed on the Claimants.

11.     The Claims Office violated the Cerro Grande Fire Assistance Act because
        they did not follow the implementing regulations and procedures including
        44 C.F.R. § 295.10, 44 C.F.R. § 295.21(d)(3), 44 C.F.R. § 295.30, 44
        C.F.R. § 295.21(a), 44 C.F.R. § 295.43, and 44 C.F.R. § 295.6.

12.     Plaintiffs' former counsel, David Berlin, did not permit Plaintiff to review
        the exhibits he was including with his objections to the Administrative
        Record.  Accordingly, Mr. Berlin got some of the information confused.
        But, according to Plaintiffs, counsel for Defendant had to know the
        location of the information during the evidentiary hearing.  Thus, his line of
        questioning was false and a misrepresentation of fact.

13.     The Administrative Record contained documents with information about
        Los Alamos National Laboratory that were not submitted by Plaintiffs and
        may be a National Security Issue.  According to Plaintiffs, the existence of
        these documents in the Administrative Record show that FEMA had poor
        document control practices.  Plaintiffs also believe that these documents
        could jeopardize the jobs of both Mr. and Mrs. Carmichael.

        The relative merits of Plaintiffs' claims are not relevant to the issue whether the parties

reached an enforceable settlement agreement.  There is no provision in the basic law of contracts

or the application of that law to the enforcement of settlements that allows parties to back out of

an agreement because they decide they could have done better if they had continued litigating

their claims.  The accuracy and completeness of the Administrative Record, the issue of due

process in front of the administrative agency, and other issues related to whether the

administrative agency reached its determination in the proper manner or reached the proper

decision are among the ultimate issues in this case.  By agreeing to settle their claims, Plaintiffs

agreed they would not continue to pursue these issues.  The validity of their agreement to settle is

not affected by the fact that Plaintiffs now wish to continue to argue their cause because they

believe they are right and the United States was wrong.  Even if Plaintiffs' point of view with

regard to their claims is divinely ordained, their agreement to settle makes the righteousness of

their perspective irrelevant.  Accordingly, the above arguments are not relevant to the issue of

whether the settlement should be enforced and do not provide a basis for the nonenforcement of

the settlement agreement.[1]

      B.    <u>There Was No Fraud, Misrepresentation, Duress Or Other Improper Inducement
To Settle That Renders The Agreement Voidable Or Unenforceable</u>

Several of Plaintiffs' arguments against enforcement of the agreement can be construed as

assertions that they were inappropriately induced into the settlement or that their agreement to

settle was obtained through duress.  These arguments are as follows:

    1.    Plaintiffs agreed to the amount of settlement under duress because their
attorney was very stressed about the proceedings.

    2.    Defendant's counsel made false statements and misrepresentations at the
evidentiary hearing that induced Plaintiffs to settle.  The allegedly false
statement was a question asked of Ms. Carmichael by Mr. Zavitz.  Mr.
Zavitz asked Ms. Carmichael, "But she did - or personnel from FEMA did
advise you that you had the right to have a hearing and, in fact, they would
grant you a hearing if you requested it, isn't that correct?"  <u>See</u> Pls' Resp.
p. 7 and Tr. Hr'g p. 59 line 3-6.  The question was a misrepresentation
because Plaintiffs did request a hearing.

    3.    Defendant's counsel's cross examination of Mrs. Carmichael at the
evidentiary hearing was designed to intimidate Plaintiffs and induce them to
settle.

    4.    Defendant's counsel's line of questioning regarding missing documents in
Plaintiffs' exhibits was false and misleading.  Plaintiffs' former counsel had
apparently placed documents behind Tab 33 but indexed them as being
behind Tab 31.  Tr. Hr'g p. 66 line 24 through p. 68 line 25.  According to

---

[1]As an aside, the Court will note that the argument enumerated as number 1 above blends
the concept of the Administrative Record with the concept of the Court record.  The two are not
coextensive.  The Administrative Record is the record developed by the Agency that was lodged
with this Court.  The Court record includes the Administrative Record and everything that has
been filed with the Court or admitted into evidence by the Court.  Accordingly, the exhibits
admitted at the hearing are all part of the Court record whether or not they are part of the
Administrative Record.

Plaintiffs, they never reviewed the exhibits before they were filed so did not realize that documents were not properly indexed. However, Defendant's counsel reviewed the exhibits so had to be aware that the information was located behind Tab 33.

5.      Plaintiffs objected to the pictures in the Administrative Record that were purportedly of their home but were, in fact, not pictures of their home. These pictures depicted a wood burning stove in a room, but they did not have a wood burning stove in their home. According to Plaintiffs, Mrs. Carmichael testified at the evidentiary hearing that there was no wood burning stove in her home, but counsel for Defendant spent a great deal of time on this issue during cross-examination, and this line of questioning was intended to intimidate Mrs. Carmichael and induce Plaintiffs to settle. The line of questioning involved five questions by Mr. Zavitz from page 69 line 2 through page 69 line 23 of the Transcript of Proceedings. The questions were as follows:

- Let's see, with respect to B-34, can you tell me what was behind Tab B-34 submitted by your counsel?
- But none of them were actually photos of your home? I mean, they don't show - do any of those photos show your actual home? Could anything be told, as far as the existence of smoke stacks or . . .
- But that's an aerial photograph from . . .
- Okay, and it doesn't show a chimney or - I mean, we can't tell what - you know, what exactly the house consists of from that photograph, is that correct?
- The objection, what was submitted as part of objection B-34 are these photographs, not the appraisal, is that correct?

The Court construes these arguments as raising the issues of duress and fraud as defenses to the enforcement of the settlement agreement. The Court will address each of these defenses in turn.

"Any contract entered into under duress is voidable and subject to rescission." <u>Romero v. Bank of the Southwest</u>, 83 P.3d 288, 293 (N.M. App. 2003). Under modern New Mexico case law, the inquiry to determine whether a contract has been obtained by duress is to ask "whether a person has been coerced into the transaction by the wrongful act of another." <u>Richards v. Allianz</u>

Life Ins. Co. of North America, 62 P.3d 320, 327 (N.M. App. 2002) (internal citations and

quotations omitted) (citing Pecos Constr. Co. v. Mortgage Inv. Co., 459 P.2d 842, 844-45

(1969)).  "Thus, the fundamental issue in duress cases is whether the statement which induced the

agreement is the type of offer to deal that the law should discourage as oppressive and thus

improper."  Id.

New Mexico courts have cited favorably to the Restatement (Second) of Contracts with

regard to duress.  See Id. at 328.  Section 175 of the Restatement states the general rule that a

contract is voidable if a "party's manifestation of assent is induced by an improper threat . . . that

leaves the victim no reasonable alternative."  Restatement (Second) of Contracts § 175(1) (1981).

Section 176 of the Restatement describes two broad types of "improper threats."  Subsection (1)

gives examples of threats which are per se improper.

> (1) A threat is improper if
>     (a) what is threatened is a crime or a tort, or the threat itself would be a
>     crime or a tort if it resulted in obtaining property,
>     (b) what is threatened is a criminal prosecution,
>     (c) what is threatened is the use of civil process and the threat is made in
>     bad faith, or
>     (d) the threat is a breach of the duty of good faith and fair dealing under a
>     contract with the recipient.

Restatement (Second) of Contracts § 176(1).  Subsection (2) gives examples of threats that may

be improper if the resulting agreement is unfair.

> (2) A threat is improper if the resulting exchange is not on fair terms, and
>     (a) the threatened act would harm the recipient and would not significantly
>     benefit the party making the threat,
>     (b) the effectiveness of the threat in inducing the manifestation of assent is
>     significantly increased by prior unfair dealing by the party making the
>     threat, or
>     (c) what is threatened is otherwise a use of power for illegitimate ends.

11

Restatement (Second) of Contracts § 176(2). "A threat to do a legal act or subject the party to the legal consequences of a refusal to make an agreement, is not duress." Lebeck v. Lebeck, 881 P.2d 727, 734 (N.M. App. 1994) (citing McDonald v. Carlton, 1 N.M. 172, 177 (1857)).

Plaintiffs' arguments simply do not come close to alleging any improper conduct that could reasonably be construed as duress sufficient to make the settlement agreement voidable. The mere fact that their attorney may have been stressed about the proceedings is not any type of improper conduct that could reasonably be said to have been "sufficient to overcome the mind of a person of ordinary firmness." Richards, 62 P.3d at 327 (citing McDonald, 1 N.M. at 176-77). Even less able to be characterized as any type of duress are the questions posed by opposing counsel at the evidentiary hearing. Our system is, by design, adversarial. See Joseph A. ex rel. Corrine Wolfe v. Ingram, 275 F.3d 1253, 1269 (10th Cir. 2002) (discussing "our adversarial system" and the premise that truth and fairness are best obtained by powerful advocacy on both sides of a question). Accordingly, when an attorney cross-examines an opposing party, the questions will likely not be entirely innocuous or benign. In fact, many of the questions may be quite provocative and irksome. This does not mean that they are improper or threatening or in any way sufficient to induce a party to enter an agreement under duress. In this case, the questions asked by Defendants' counsel at the evidentiary hearing were in no way threatening and cannot be construed as having placed Plaintiffs under duress.

With regard to Plaintiffs' allegations of fraud, "misrepresentations by one party . . . can make a contract voidable by the other party." Sisneros v. Citadel Broadcasting Co., 142 P.3d 34, 40 (N.M. App. 2006) (citing Restatement (Second) of Contracts § 164). In order for a person to show that he is entitled to have an agreement voided, he must show that the other party (1) made

a misrepresentation that was (2) material or fraudulent and which (3) induced the person to enter into the agreement, and that (4) the person's reliance on the misrepresentation was justified.  Id.

Plaintiffs argue that Defendant's counsel made false statements and misrepresentations during his cross-examination of Mrs. Carmichael.  The first allegedly false statement or misrepresentation was a question posed to Mrs. Carmichael as quoted in the second enumerated argument above.  There are some basic problems with Plaintiffs' argument with regard to this question.  First, an attorneys' question is not a statement or representation, false or otherwise; it is a question.  Second, this particular question, standing alone, does not carry any implication that Plaintiffs failed to request a hearing.  Third, Mrs. Carmichael's answer to the question was somewhat lengthy, but, in essence, she answered "yes" but stated that it had not been called a hearing but rather a meeting, that Plaintiffs and their former counsel made more than one query about a hearing, that personnel from FEMA were vague about a hearing in response to Plaintiffs' queries, and that the issue of a hearing simply went away because Plaintiffs never heard anything more about a hearing.  See Tr. Hr'g, p. 59 line 7-13.  Thus, any implication in the question that Plaintiffs had failed to request a hearing was responded to by Mrs. Carmichael.  Ultimately, Plaintiffs have utterly failed to show that Defendant's counsel made a misrepresentation.  Moreover, even if Plaintiffs had shown a misrepresentation, they have failed to show how such a misrepresentation could have induced them into a settlement or how they were justified in relying on this statement.

Plaintiffs also contend that Defendant's counsel made misrepresentations to the Court when he engaged in the line of questioning regarding the lack of any documents behind Tab 31 of Plaintiffs' exhibits.  Unlike the question referenced in Plaintiffs' second enumerated argument,

13

Defendant's counsel did more than ask questions during this exchange; he made representations to the Court in response to questions from the Court during this line of questioning. See Tr. Hr'g p. 67 line 6, p. 68 lines 3-25.

Plaintiffs contend that these representations were false because Defendant's counsel was representing that there were no documents regarding lost wages or medical bills in Plaintiffs' exhibits, and Defendant's counsel knew there were documents regarding lost wages and medical bills behind Tab 33. However, if you take the entire exchange into consideration, it is clear that the Court realized there were documents behind Tab 33 that contained information that was responsive to what was represented to be behind Tab 31, namely information on lost wages and medical bills. It is also clear that the Court was asking questions of counsel to clarify that the information was contained within the Plaintiffs' exhibits. Defendant's counsel made clear to the Court that there were documents behind Tab 33 that contained information on lost wages and medical bills. Counsel's contention was that these documents had not previously been submitted to Ms. Durbin at FEMA for inclusion in the Administrative Record.

There is no dispute in this case that Plaintiffs' exhibits contained documents that were never submitted to FEMA for the Administrative Record - Plaintiffs themselves asked to supplement the Administrative Record with new documents not previously submitted. See Plaintiffs' Motion for Leave to File Additional Documents (Doc. 7) and Plaintiffs' Objections to the Administrative Record (Doc. 8). It is also clear that some of Plaintiffs' exhibits, listed in the Objections to the Administrative Record, were documents that had not previously been submitted for the Administrative Record. See Doc. 8. While Plaintiffs' description of exhibit 31 in their Objections is clearly described as something previously submitted to FEMA for the Administrative

14

Record, the description of Exhibit 33 only describes the Proof of Loss as having been previously submitted, and it is ambiguous as to whether the documentation and summaries were also previously submitted.  See Doc. 8 pp. 8-9.  Defendant's counsel represented to the Court that the documentation and summaries contained in Plaintiffs' exhibit 33 were not previously submitted to Ms. Durbin at FEMA, and that there were no documents behind Tab 31, the exhibit tab which Plaintiffs' previous counsel represented as containing documents that had been previously submitted.  Thus, Defendant's counsel stated that they had no way of identifying what documents Plaintiffs believed were missing from the Administrative Record, and that the Government believed that all of the documents that had been submitted were contained in the Administrative Record.  He did not represent to the Court that there were no documents regarding lost wages or medical bills anywhere in Plaintiffs' exhibits.

Additionally, Mrs. Carmichael, in response to Defendant's counsel's cross-examination, affirmatively testified that she had submitted to FEMA a Proof of Loss with attachments totaling approximately 155 pages and that all documentation regarding lost wages was submitted to FEMA for the Administrative Record on May 9, 2003.  Tr. Hr'g, p. 66 lines 2-7 and 21-23.  Thus, to the extent Defendant's counsel argued to the Court that these documents had not been previously submitted to FEMA, Mrs. Carmichael gave her own testimony to the contrary, and the Court was free to make a factual determination based on the entire record.

Plaintiffs have failed to show that Defendant's counsel made a misrepresentation with regard to the overall existence of the documents behind Tabs 31 and 33.  To the extent Defendant's counsel's assertion regarding whether these documents were submitted to FEMA may have been incorrect, Plaintiffs ability to give contrary testimony clearly shows that Plaintiffs

did not rely on Defendant's assertion.  Because Plaintiffs failed to show that they relied on these assertions, they cannot show that these alleged misrepresentations induced their agreement to settle.  In summary, Plaintiffs have failed to meet their burden of showing that the settlement agreement reached between them and the Defendant is voidable because it was obtained through fraud or duress.

      C.     <u>Plaintiffs' Orally Agreed To The Essential Terms Of The Settlement And The Settlement Is Enforceable Even Though The Terms Were Not In Written Form Until After The Agreement Was Reached</u>

Plaintiffs make two arguments that there was no settlement agreement because they did not agree to the terms as contained in the written agreement.  Plaintiffs' arguments are as follows:

1.     The Plaintiffs agreed only to the amount of settlement, the written language of the settlement agreement was not available to the Plaintiffs until after the hearing, Plaintiffs could not agree to the written terms before seeing them, and, therefore, the agreement reached during the evidentiary hearing was not complete.  Plaintiffs cannot agree to the terms of the written agreement, and Mr. Zavitz has stated that the terms of the written agreement are not negotiable.

2.     The Cerro Grande Fire Claims process provided protection for claimants from insurance subrogation, but this protection is not provided for in the written settlement agreement.  Plaintiffs believe language protecting them from insurance subrogation should be included in the settlement agreement.

With regard to Plaintiffs' first argument, Plaintiffs agreed at the hearing to the essential terms of the agreement - that the would receive $90,000.00 in a manner that would be tax-free. Tr. Hr'g p. 78 lines 11-12.  Counsel for the Defendant stated on the record that the closing documents would be the standard fire claim release as provided by regulation.  Tr. Hr'g p. 78 lines 15-17.  Plaintiffs did not raise any objection to a release of their fire claims as a term of settlement.  Plaintiffs' argument that they only agreed to the amount of settlement is baseless.

Plaintiffs do not point to any specific language in the written agreement that is contrary to the essential terms of the agreement that were stated on the record at the November 2, 2006 evidentiary hearing.  I have reviewed the written settlement agreement[2] and conclude that there is no essential term in the written agreement that was not orally agreed to by the parties on the record at the hearing.  Without having raised any specific objections to any of the terms of the written settlement as being contrary to those recited at the hearing, Plaintiffs are basically arguing that they cannot be bound by an oral agreement.  This is not the law.  See Rojo v. Loeper Landscaping, Inc., 759 P.2d 194, 196 (N.M. 1988) (An oral settlement is as enforceable as a written settlement).

Plaintiffs' second argument is that the settlement agreement does not contain any language protecting them from an insurance subrogation claim.  Defendant's reply brief points out that such language is not necessary because the Cerro Grande Fire Assistance Act and its implementing regulations provide that subrogation claims are submitted to FEMA separately from a victim's direct claims of loss.  However, Defendant does not object to the Court providing that payment to Plaintiffs of the $90,000.00 settlement amount is made with respect to Plaintiffs' direct claim under the Cerro Grande Fire Claims Programs and not with respect to any subrogation claim by their insurer.

It is apparent that Plaintiffs regret their agreement to settle this case and wish to continue their battle with FEMA.  However, the battle is over.  The parties reached a settlement agreement, and that agreement shall be enforced.

---

[2]The Settlement Agreement was attached to Defendant's Motion as Exhibit A.  However, Exhibit A did not scan properly into the Court's electronic filing system, and Defendant resubmitted it as Exhibit A to Docket No. 60.

17

II.     METHOD OF PAYMENT

Defendant's Reply notes that the settlement agreement provides at p. 2 ¶ 3 that the settlement will be paid to Plaintiffs' counsel of record, and that this is no longer possible because Plaintiffs are no longer represented by an attorney.  Defendant proposes that the Court direct that payment under the settlement agreement be made into the registry of the Clerk of the United States District Court for the District of New Mexico.  Plaintiffs make no response to this recommendation in their surreply, and the Court concurs with Defendant's recommendation as being the best method of payment in lieu of deposit with an attorney.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Enforce Settlement (Doc. 46) is hereby GRANTED.  In accordance with the Order, Plaintiffs are hereby ORDERED to execute the Settlement Agreement attached to Defendant's Errata filing (Doc. 60) as Exhibit A. The Settlement Agreement must be executed by Plaintiffs not later than February 15, 2007 and returned by First Class mail to Counsel for Defendant postmarked not later than February 15, 2007.  If Plaintiffs fail to execute the Settlement Agreement as herein ordered, the Court will issue an Order to Show Cause Why Plaintiffs Should Not Be Held In Contempt.

IT IS FURTHER ORDERED that the payment of $90,000.00 made to Plaintiffs under the Settlement Agreement is made with respect to their direct claim under the Cerro Grande Fire Claims program and not with respect to any subrogation claim by any insurer.

IT IS FURTHER ORDERED that payment of the $90,000.00 made to Plaintiffs under the Settlement Agreement shall be made to the registry of the Clerk of the United States District

Court for the District of New Mexico in lieu of the method provided for in the Settlement

Agreement at page 2, ¶ 3 because Plaintiffs are no longer represented by counsel.

IT IS FURTHER ORDERED that, this case having reached final resolution, all remaining

pending motions in this case are MOOT and are hereby DENIED AS MOOT.

UNITED STATES DISTRICT JUDGE